UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ALFONSO PORTILLO,

                    Petitioner,

                    09 Cr. 1142 (RPP)
                    11 Cv. 3479 (RPP)

      - vs. -

                    **OPINION & ORDER**

PREET BHARARA,
U.S. Attorney for the Southern District of
New York,

                    Respondent.
------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.,**

On May 20, 2011, Petitioner Alfonso Portillo, the former President of Guatemala ("Portillo" or "Petitioner"), filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Therein, Portillo asserts that he is in the constructive custody of the United States and that the United States Attorney for the Southern District of New York, Preet Bharara ("Bharara" or "Respondent") is detaining him without cause in Guatemala. Petitioner requests that this Court: (1) order Bharara to show cause as to why he is continuing to detain Petitioner in his constructive custody by means of an arrest warrant issued from this district which has been made part of an extradition request by the United States to Guatemala (Pet. for Writ of Habeas Corpus under 28 U.S.C. § 2241 ("Pet.") at 1); (2) order Bharara to inform the Guatemalan government of alleged relevant misrepresentations by Bharara in the pending extradition request (id. at 10); and (3) allow Petitioner to conduct limited jurisdictional discovery and hold a hearing on these issues (id.). On July 26, 2011, the Government filed a memorandum of law in response to Petitioner's motion, and on August 23, 2011, Petitioner filed a memorandum of law in reply. On September 14, 2011, the Court held oral argument on this matter.

1

This case requires the Court to decide whether a non-citizen, detained in a foreign country, by a foreign government, pursuant to an extradition request by the United States, is entitled to habeas corpus relief.  For the following reasons, Portillo's petition is denied for lack of jurisdiction.

## I. BACKGROUND

Portillo is a Guatemalan citizen, born in Guatemala on September 24, 1951.  (Diplomatic Note from Stephen G. McFarland, U.S. Ambassador to Guatemala, Embassy of the United States of America, to the Ministry of Foreign Affairs of the Republic of Guatemala dated Feb. 25, 2010 ("Diplomatic Note")[1] at 4.)  He served as the President of Guatemala from January 14, 2000 through January 14, 2004.  (Id. at 2.)  During that time, he exercised direct oversight over Guatemala's two national banks, one of which is Credito Hipotecario Nacional ("CHN").  (Id.) On February 2, 2000, Portillo appointed a new President to CHN.  (Id.)

Between February 18, 2004 and October 7, 2008, Portillo was a resident of Mexico. (Expert Legal Opinion of M. Cherif Bassiouni dated July 27, 2010 relating to the Extradition Request of the United States to the Republic of Guatemala for the Extradition of Former President Alfonso Portillo ("Bassiouni Op.")[2] at 1.)  On October 7, 2008, Portillo was extradited from Mexico to Guatemala pursuant to a criminal charge of peculado (embezzlement) pending in Guatemala.  (Id.)

### A.    Extradition Request by the United States

On December 1, 2009, a Grand Jury sitting in the Southern District of New York indicted Portillo on a sealed one-count indictment ("Indictment"), charging that between the dates of January 14, 2000 and January 14, 2004, Portillo willfully and knowingly conspired with others to

---

[1] Attached to the Petition as Exhibit B.
[2] Attached to the Petition as Exhibit G.

embezzle millions of dollars of public funds and then laundered those funds through banks in the United States and Europe in violation of 18 U.S.C. § 1956(a)(2)(B)(i). (Indict. ¶¶ 16-17, No. 09 Cr. 1142, ECF No. 2.) Specifically, the Indictment charges Portillo with embezzling money from the government of Guatemala, and making fraudulent transactions through CHN and other Guatemalan banks with the help of the President of CHN and other co-conspirators. The co-conspirators allegedly laundered these funds through various international bank accounts, including accounts in the United States. (Id. ¶¶ 3-4.)

On January 25, 2010, Magistrate Judge Ronald L. Ellis ordered the Indictment unsealed. (See Order dated Jan. 25, 2010, No. 09 Cr. 1142, ECF No. 3.) Concurrently, the U.S. Government requested that the Guatemalan authorities arrest Petitioner so that he could be extradited to the Southern District of New York. (See Letter from Preet Bharara, United States Attorney, to the Hon. Robert P. Patterson dated Jan. 25, 2010 ("Bharara Letter")[3].) On January 26, 2010, Portillo was arrested in Guatemala by Guatemalan authorities on a provisional extradition arrest warrant. (Pet. at 3.)

On February 25, 2010, the United States Ambassador to Guatemala, Stephen G. McFarland ("McFarland" or "U.S. Ambassador") submitted a formal request for Portillo's extradition to the Guatemalan government. (Diplomatic Note at 1, 5; see Pet. at 3-4.) The extradition request specified that Portillo had been charged with one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956, and represented that money laundering was an extraditable offense pursuant to the applicable treaties. (Diplomatic Note at 1, 4.)

Portillo challenged his extradition in the Guatemalan courts. On March 17, 2010, the

---

[3] Attached to the Petition as Exhibit A.

3

Guatemalan trial court entered an order allowing the Guatemalan government to extradite Portillo to the United States. (Bassiouni Op. at 2; Gov't's Mem. in Resp. to Pet'r's Mot. for Miscellaneous Relief Under 28 U.S.C. § 2241 ("Gov't's Mem.") at 2.) The Guatemalan appellate court and Supreme Court affirmed the validity of the extradition, (Gov't's Mem. at 2), and on August 26, 2011, the Guatemalan Constitutionality Court upheld the Supreme Court's determination that extradition was proper (Op. of the Constitutionality Ct., Republic of Guatemala, Central America dated Aug. 26, 2011, Record No. 1566-2011[4] at 24; Tr. of Sept. 14, 2011 Oral Arg. ("Tr.") at 46). On November 15, 2011, Guatemalan President Alvaro Colom approved Portillo's extradition. See Guatemala to extradite ex-leader Alfonso Portillo to US, BBC News (Nov. 15, 2011), http://www.bbc.co.uk/ news/world-latin-america-15750420; see also Press Release, U.S. Extradition Request for Former President Alfonso Portillo (Taken Question), U.S. Dept. of State (Nov. 17, 2011), http://www.state.gov/r/pa/prs/ps/2011/11/177323.htm. Portillo has yet to be extradited from Guatemala.

**B.   Criminal Charges in Guatemala**

On May 9, 2011, a split three-judge panel acquitted Portillo in his domestic embezzlement trial in the Guatemalan court. (Pet. at 4; Gov't's Mem. at 3 n.1.) The Guatemalan government immediately filed an appeal of the panel's decision. (Gov't's Mem. at 3 n.1.) Petitioner claims that, despite his acquittal, he is currently being detained "as a prisoner at Base Militar Mariscal Zavala, Zona 17, Guatemala City, Guatemala,"[5] (Pet. at 2), and that he "remains

---

[4] Submitted to the Court at oral argument as Petitioner's Exhibit CC.

[5] There is some uncertainty as to whether Petitioner is currently imprisoned or if he was released by the court on his own recognizance. Although the Petition states that Petitioner is currently being detained in a Guatemalan military base, (Pet. at 2), it appears that the court may have released him from prison on May 9, 2011, on the condition that he remain in Guatemala. See Guatemala Court Frees Former President Portillo, Reuters (May 10, 2011), http://in.reuters.com/article/2011/05/10/idINIndia-56895620110510 ("A Guatemalan court dismissed charges

in Respondent's constructive custody not because of the Guatemalan government's pending appeal of his acquittal of the domestic embezzlement charges, but solely on the basis of the U.S. extradition request issued on February 25, 2010." (Pet. at 4.) For purposes of this opinion, the Court will accept Petitioner's position as accurate.

## II. LEGAL STANDARD

Title 28 U.S.C. § 2241 provides, in relevant part, that

> [t]he writ of habeas corpus shall not extend to a prisoner unless – (1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or . . . (3) He is in custody in violation of the Constitution or laws or treaties of the United States . . . .

28 U.S.C. § 2241(c). Habeas jurisdiction under section 2241(c) extends only to those "in custody," however, "the statute does not attempt to mark the boundaries of 'custody' nor in any way other than by use of that word attempt to limit the situations in which the writ can be used." Jones v. Cunningham, 371 U.S. 236, 238 (1963).

Habeas jurisdiction requires only "that the court issuing the writ have jurisdiction over the custodian." Braden v. 30th Judicial Circuit Court of Ky., 410 U.S. 484, 495 (1973) (emphasis added). "The court can issue a writ 'within its jurisdiction' . . . even if the prisoner himself is confined outside the court's territorial jurisdiction." Id. (citing 28 U.S.C. § 2241(a)). Under the "immediate custodian rule," a habeas proceeding is properly commenced "against some person who has the immediate custody of the party detained, with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary." Wales v. Whitney, 114 U.S. 564, 574 (1885); see Padilla v. Rumsfeld, 542 U.S. 426, 435 (2004) (A "custodian" has "the ability to produce the prisoner's body before

---

against former President Alfonso Portillo of embezzling public funds, ordering his immediate release on Monday but requiring him to stay in the country."). However, under U.S. law, the uncertainty is irrelevant, as a person released on his own recognizance is nevertheless 'in custody' for habeas purposes. See Hensley v. Mun. Court, San Jose Milpitas Judicial Dist., Santa Clara Cnty., Cal., 411 U.S. 345, 350 n.8 (1973).

the habeas court.")

Supreme Court precedent dictates that the "in custody" requirement for habeas corpus petitions should be liberally construed. Maleng v. Cook, 490 U.S. 488, 492 (1989); see also Valdez v. Hulihan, 640 F. Supp. 2d 514, 515 (S.D.N.Y. 2009). "The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected." Harris v. Nelson, 394 U.S. 286, 291 (1969). Moreover, all effort should be made to hear the petition, as the Supreme Court has "consistently rejected interpretations of the habeas corpus statute that would suffocate the writ in stifling formalisms . . . or scholastic procedural requirements." Hensley v. Mun. Court, San Jose Milpitas Judicial Dist., Santa Clara Cnty., Cal., 411 U.S. 345, 350 (1973).

The burden, however, is on the petitioner to establish the jurisdiction of the Court. Thompson v. Cnty. of Franklin, 15 F.3d 245, 249 (2d Cir. 1994); see Abu Ali v. Ashcroft, 350 F. Supp. 2d 28, 41 (D.D.C. 2004). When determining the legal sufficiency of the petitioner's jurisdictional allegations, the petitioner's factual allegations are taken as true and all reasonable inferences are drawn in the petitioner's favor. See Hawk v. Olson, 326 U.S. 271, 272 (1945). The court "need not limit itself to the allegations of the petition," and "may consider any materials outside the pleadings as it deems appropriate to determine whether it has jurisdiction over the case." Abu Ali, 350 F. Supp. 2d at 41 (citations omitted).

### III. DISCUSSION

In situations where American citizens confined overseas – and thus outside the territory of any district court – have sought habeas relief, "the petitioner's absence from the district does not present a jurisdictional obstacle to the consideration of the claim." Braden, 410 U.S. at 498 (citations omitted). In this situation, the issuing court need only have jurisdiction over the

respondent state actor. Id. at 495. This Court has jurisdiction over Bharara; the question remains whether Bharara is the "custodian" of Petitioner, a Guatemalan citizen detained in Guatemala.

A petitioner's citizenship can affect habeas jurisdiction. Munaf v. Geren, 553 U.S. 674, 688 (2008). Courts have recognized an "ascending scale of rights" for individuals depending on their connection to the United States, where citizenship provides a longstanding basis for jurisdiction, as does physical presence, even among aliens. Rasul v. Bush, 542 U.S. 466, 486 (2004) (Kennedy, J., concurring in judgment). No jurisdiction is recognized, however, where enemy aliens "at no relevant time were within any territory over which the United States is sovereign." Id.; see also Hirota v. MacArthur, 338 U.S. 197, 198 (1948) (per curium) (denying habeas petition filed on behalf of several Japanese citizens who had been convicted and sentenced by a military tribunal that the Court deemed to be a construct of the Allied Powers and not a court of the United States). But see, Boumediene v. Bush, 553 U.S. 723, 770-71 (2008) (finding that aliens "detained by our Government in territory over which another country maintains de jure sovereignty" are entitled "to the privilege of habeas corpus to challenge the legality of their detention").

**A.   Constructive Custody**

When the petitioner is not in actual, physical custody of the United States, habeas jurisdiction requires that the petitioner's movements be "restrained by authority of the United States." Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 213 n.9 (1953). "[T]here must be some involvement of United States officials under either [section 2241(c)(1) or (3)] to satisfy the 'in custody' requirement." Abu Ali, 350 F. Supp. 2d at 47. If a petitioner is not under physical control of the respondent, "[i]t is enough that the imprisoning sovereign is the respondent's agent . . . that he can point to some continuing collateral disability which is the

result of the respondent's action." Steinberg v. Police Court of Albany, 610 F.2d 449, 453 (6th Cir. 1979) (citations omitted).  Thus, habeas jurisdiction includes constructive custody, i.e. "custody of a person . . . whose freedom is controlled by legal authority but who is not under direct physical control."  Black's Law Dictionary 441 (9th ed. 2009).

Broad conclusory allegations are insufficient to prove that the United States is responsible for a petitioner's continued detention by a foreign sovereign.  In re Pet'rs Seeking Habeas Corpus Relief in Relation to Prior Dets. at Guantanamo Bay, 700 F. Supp. 2d 119, 128 (D.D.C. 2010).  In In re Pet'rs Seeking Habeas Corpus Relief, the alien petitioners alleged that they were in the constructive custody of the United States even though they had been transferred from Guantanamo Bay to the custody of other sovereign nations, because "their continued physical detention by those nations [wa]s directed by or otherwise at the behest of the United States."  Id. at 127.  In rejecting their claims of constructive custody, the court reiterated that "detainees cannot 'prevail on the ground that [a] foreign sovereign is an agent of the United States merely because . . . the Government engages in a dialogue to ascertain or establish what measures the receiving government intends to take pursuant to its own domestic laws.'"  Id. at 128 (quoting Kiyemba v. Obama, 561 F.3d 509, 515 n.7 (D.C. Cir. 2009) (citations and quotations omitted), cert. denied, 130 S. Ct. 1880 (2010).

In Abu Ali v. Ashcroft, the petitioner, a United States citizen detained in Saudi Arabia, presented unrebutted evidence that his detention was at the "behest and ongoing direction of United States officials." 350 F. Supp. 2d at 67.  Specifically, the court noted that:

> petitioners [] alleged and introduced at least some evidence suggesting that (i) the United States initiated the arrest of Abu Ali in Saudi Arabia; (ii) the United States has interrogated Abu Ali in Saudi Arabia; (iii) the United States is controlling events in Saudi Arabia; (iv) the United States is keeping Abu Ali in Saudi Arabia to avoid constitutional scrutiny by American courts; (v) Saudi Arabia would immediately release Abu Ali to United States officials upon a request by the

8

>United States government; and (vi) Abu Ali has been subjected to torture with the knowledge of the United States.

Id. While the court characterized this evidence as "considerable," it was not sufficiently conclusive to establish habeas jurisdiction. Id. at 67. Instead, the court ordered limited jurisdictional discovery in order to determine whether Abu Ali was in constructive custody. Id. at 67-68. The court delineated several factors to consider in determining whether the citizen petitioner was in actual or constructive custody of the United States, including whether:

> (i) [petitioner] was detained at the behest of United States officials; (ii) his ongoing detention is at the direction of the United States enlisting a foreign state as an agent or intermediary who is indifferent to the detention of the prisoner; (iii) he is being detained in the foreign state to deny him an opportunity to assert his rights in a United States tribunal; and (iv) he would be released upon nothing more than a request by the United States.

Id. at 68 (citations omitted).

Petitioner here argues that he is being "held in custody abroad by a foreign government acting for and on behalf of Respondent and relevant U.S. government agencies." (Pet'r's Reply to Resp't's Mem. in Resp. to Pet'r's Pet. for Writ of Habeas Corpus ("Pet'r's Reply") at 3.) Specifically, Petitioner argues that the Diplomatic Note, submitted to the Guatemalan Government by McFarland in support of the U.S. Government's extradition request, contained a "misrepresentation by omission," (Tr. at 18), i.e. that it did not disclose that the United States has specifically excluded the indicted offense of money laundering conspiracy as a legal basis for cooperation under extradition. In addition, Petitioner argues that McFarland admitted to "personally working on capturing and locking up Portillo" and "working together with and financing CICIG [Comisión Internacional Contra la Impunidad en Guatemala]" in furtherance of that goal. (Aff. of Rubén Salvador Mazariegos Vásquez dated Jan. 19, 2011 ("Vásquez Aff.")[6] at

---

[6] Attached to Petitioner's Reply Memorandum as Exhibit 1.

9

2; see Tr. at 35.)

Petitioner requests limited jurisdictional discovery to provide the evidence necessary to prove actual or constructive custody if the Court finds that the evidence in the record at this stage of the proceedings is not sufficient. (Pet'r's Reply at 4-5.) Respondent contends that there is no actual or constructive custody because Portillo is in "the physical custody of another sovereign nation, pursuant to the decision of that nation's executive authority to act on the United States' extradition request." (Gov't's Mem. at 5.) In order to determine whether the Petitioner is in the constructive custody of the United States, and thus entitled to habeas jurisdiction, the Court must examine the alleged actions taken by the U.S. Government.

**B.      Misrepresentation by Omission**

Petitioner argues that the fundamental issue before the court is "whether the [United States] can make a misrepresentation to a foreign government and pursue an extradition request for an offense that is not an extraditable offense under [federal] law." (Tr. at 2.) Petitioner contends that the U.S. Ambassador's Diplomatic Note to the Guatemalan government deliberately "represent[ed] that the extradition is covered by Articles I and X of the U.S.-Guatemalan extradition treaty," but "fails to advise Guatemala that the indicted offense of money laundering conspiracy is not listed as an extraditable offense in any article of that treaty." (Tr. at 4-5; see Treaty for the Mutual Extradition of Fugitives from Justice, U.S.-Guatemala, Feb. 27, 1903, 33 Stat. 2147 (the "U.S.-Guatemala Extradition Treaty")[7]) According to Petitioner, this omission by the U.S. Ambassador is sufficient to establish constructive custody of the Petitioner by the United States. (Tr. at 30.)

McFarland's Diplomatic Note states, in pertinent part:

---

[7] Attached to the Petition as Exhibit C.

> Extradition is covered by Articles I and X of the U.S.-Guatemala Extradition Treaty, which entered into force on August 15, 1903, as supplemented and amended by the Convention of February 20, 1940, which entered into force on March 13, 1941 (the "Extradition Treaty"). The money laundering offense is covered by Article 23 of the United Nations Convention Against Corruption, adopted by the applicable United Nations Conference on October 31, 2008 (the "UN Convention"). Both the United States and Guatemala are parties to the UN Convention. In accordance with Article 44 of that Convention, each of the offenses covered by the Convention shall be deemed to be included as an extraditable offense in any extradition treaty existing between States Parties to the Convention.

(Diplomatic Note at 4.) Petitioner argues that this statement is misleading because it fails to advise the Guatemalan government that the United States has specifically excluded the United Nations Convention Against Corruption (the "UN Convention") as a legal basis for cooperation on extradition. (Tr. at 5.)

In support of this argument, Petitioner submits a document entitled "Status of Ratification of the United Nations Convention against Corruption as at [sic] 20 January 2008 and notifications, declarations and reservations thereto, Note by the Secretariat" dated January 21, 2008[8] (the "Convention Summary Note"). The Convention Summary Note purports to provide "a summary of the status of ratification of the United Nations Convention against Corruption" and "information on the relevant notifications, declarations and reservations submitted to the Secretary-General in accordance with the relevant provisions of the Convention." (Convention Summary Note at 1.) Under the heading "Notifications pursuant to article 44, paragraph 6(a): the Convention as the legal basis for cooperation on extradition," the Convention Summary Note states, in pertinent part, that the "United States specifically excluded the Convention as the legal basis for cooperation on extradition." (Id. at 5.)

In response to the Court's questioning at oral argument as to the legal validity of the

---

[8] Attached to the Petition as Exhibit D.

Convention Summary Note, Petitioner submitted another document, entitled "Ratification (with reservation, declarations and notifications), United States of America"[9] (the "U.S. Declaration"), which, according to Petitioner, is the official declaration by the United States to which the Convention Summary Note refers. (See Tr. at 11-12.) The U.S. Declaration states that, "[p]ursuant to Article 44, paragraph 6, of the [UN] Convention, . . . the United States will not apply Article 44, paragraph 5." (U.S. Declaration at 273.)

Petitioner also cites portions of a report entitled "Detailed Analysis of the Provisions of the United Nations Convention Against Corruption," submitted by Secretary of State Condoleeza Rice (the "Rice Report"), and attached to the letter of transmittal from President George W. Bush to the United States Senate at the time that the ratification of the UN Convention was requested by the administration.[10] Petitioner cites a portion of the Rice Report which states that

> Article 44 ("Extradition") elaborates a regime for extradition of persons for offenses established in accordance with this Convention, as long as the offense is criminal under the laws of the requesting and requested State Parties. The article provides that State Parties may make extradition conditional on a bilateral extradition treaty. Pursuant to this provision, for the United States, the Convention will not provide a substitute international legal basis for extradition, which will continue to be governed by U.S. domestic law and applicable bilateral extradition treaties, including their grounds for refusal. As such, a State, the United States is obliged by Article 44(6) to so notify the UN Secretary-General. Accordingly, upon ratification of the Convention, the United States would notify the depositary that pursuant to Article 44(6) it will not apply Article 44, paragraph 5.

(Rice Report at 12.)

Petitioner contends that the effect of the U.S. Declaration, the Convention Summary Note, and the Rice Report "is to inform essentially every government around the world that [the United States] does not regard [the UN Convention] as a legal basis for extraditions." (Tr. at 13.) In reality, the effect of the documents cited by Petitioner is to make clear that the United States

---

[9] Submitted to the Court at oral argument as Petitioner's Exhibit AA.
[10] Attached to the Petition as Exhibit G, Appendix 2.

will not apply Article 44, paragraph five of the UN Convention, which states:

> [i]f a State Party that makes extradition conditional on the existence of a treaty receives a request for extradition from another State Party with which it has no extradition treaty, it may consider this Convention as the legal basis for extradition in respect of any offense to which this article applies.

(UN Convention at 31 (emphasis added).)[11]  By its very terms, paragraph five applies only in the situation where two State Parties do not have an extradition treaty in place.  Article 44, paragraph four, which the U.S. Government does apply, states, in pertinent part: "[e]ach of the offences to which this article applies shall be deemed to be included as an extraditable offense in any extradition treaty existing between State Parties." (Id. at 30.)  Thus, as the Rice Report explains, in a portion not cited by Petitioner:

> [f]or the United States, the principal legal effect of [Article 44] would be to deem the offenses established in accordance with the Convention (i.e., the mandatory offenses) to be extraditable offenses under U.S. bilateral extradition treaties.  The result would be to expand the scope of older U.S. bilateral extradition treaties that list extraditable offenses and were concluded at a time when offenses such as money laundering did not yet exist.

(Rice Report at 12.)

Extraditable offenses under Article 44 of the UN Convention include "offences established in accordance with this Convention where the person who is the subject of the request for extradition is present in the territory of the requested State Party, provided that the offence for which extradition is sought is punishable under the domestic law of both the requesting State Party and the requested State Party." (UN Convention at 30-31; Gov't's Mem., Ex. B; see Tr. at 56-57.)  Portillo concedes that money laundering is a criminal offense in both the requesting State Party (the United States) and the requested State Party (Guatemala).  (Bassiouni Op. at 2.)  In fact, the Rice Report specifically identifies money laundering as an

---

[11] Attached to the Petition as Exhibit F.

example of an offense that is now extraditable as a result of the UN Convention. Far from being misleading, the U.S. Ambassador's request accurately summarized the applicable treaties and laws authorizing extradition. Petitioner fails to demonstrate that the Diplomatic Note was misleading, or written with the underlying purpose of wrongfully detaining Petitioner in Guatemala. Thus, it cannot be said, as Petitioner claims, that the Diplomatic Note establishes constructive custody by the U.S. Government over Petitioner.

        C.      "Working With" CICIG

In a final effort to establish constructive custody by the United States, Petitioner alleges that "Respondent was directly responsible for requesting Petitioner's detention," (Pet'r's Reply at 4), and that a grant of limited jurisdictional discovery will reveal that "representatives of the U.S. government were actively involved in Guatemala in instigating Petitioner's arrest" (id. at 5). At oral argument on September 14, 2011, Petitioner cited two documents which he claims support these allegations. The first is the affidavit of a Guatemalan labor leader, Rubén Salvador Mazariegos Vásquez ("Vásquez") (the "Vásquez Affidavit"); the second is a confidential cable sent by the U.S. Ambassador on January 27, 2010 ("Confidential Cable") which was apparently leaked online (see Tr. at 36).

The Vásquez Affidavit relates a conversation between the U.S. Ambassador and Vásquez that occurred in late 2008, more than one year prior to the issuance of the extradition request. (Tr. at 34.) According to the affidavit, during a private meeting with Guatemalan union leaders, Vásquez commented about the need for the U.S. Ambassador to prosecute significant tax evaders "just as former President Alfonso Portillo had done during his government." (Vásquez Aff. at 1.) McFarland responded by saying, "let's not talk about that corrupt government because I am personally working on capturing and locking up Portillo; my embassy is working together with

14

and financing CICIG, and I am in close communication with [CICIG Commissioner] Carlos Castresana. I will not rest until I see Portillo behind bars." (Id. at 2.) Petitioner argues that although the conversation relates to the underlying charge, it shows that the U.S. Ambassador was exerting custodial control over Portillo well before the U.S. Ambassador issued his extradition request. (Tr. at 36.)

The Confidential Cable states that "Portillo's capture is a major victory for CICIG, the USG [United States Government], the Attorney General's Office, and for the rule of law in general. . . . The Embassy will remain vigilant, and will continue its joint efforts with CICIG." (Cable de EE UU en el que Castresana explica que teme por la vida del expresidente Alfonso Portillo, juzgado por corrupción ("Confidential Cable")[12] at 5.) Petitioner argues that this cable indicates that the U.S. Government was "involved at the very outset in an effort to gain custodial control over Portillo." (Tr. at 38.)

"[T]eaming up with foreign agents cannot exculpate officials of the United States from liability to United States citizens for the United States officials' unlawful acts." Abu Ali, 350 F. Supp. 2d at 50 (quoting Ramirez de Arellano v. Weinberger, 745 F.2d 1500, 1506-09 (D.C. Cir. 1984) (en banc), rev'd on other grounds, 471 U.S. 1113 (1985). Petitioner analogizes his constructive custody to that of the petitioner in Abu Ali, arguing that the Vásquez Affidavit and the Confidential Cable, taken together, show that "U.S. State Department employees [were] working with prosecutors in Guatemala on the ground with clear-cut intent of trying to establish control and custody over the petitioner." (Tr. at 38.) However, the Abu Ali court went out of its way to distinguish the factual scenario in that case from "the circumstance where the United States request that a foreign government extradite a citizen to the United States," as occurred

---

[12] Submitted to the Court at oral argument as Petitioner's Exhibit BB.

15

here, stating:

> An obvious distinction between the extradition context and the present situation . . . is that when an individual is extradited to the United States, following the extradition he will have a full opportunity to assert his rights in a United States court. In the present case, just the opposite is true: The United States is alleged to be taking steps that specifically deny Abu Ali an opportunity to "sue in the Federal courts for the protection of [his] rights." Alabama Great S. Ry. Co. v. Thompson, 200 U.S. 206, 218 (1906).
>
> Therefore, this case is not at all like United States v. Sinclair, 702 F.Supp. 477 (D. Del. 1989), where the court held that it lacked jurisdiction to consider the habeas petition of an individual arrested by British authorities pursuant to a United States demand for his extradition to this country, after he had been tried and convicted for mail fraud but then fled the country. Here, a citizen is allegedly being detained at the direction of the United States in another country without any opportunity at all to vindicate his rights. As the cases in this section suggest, if true, this is an exceptional situation that demands particular attention to the rights of the citizen.

350 F. Supp. 2d at 54-55.

United States v. Sinclair, mentioned by the Abu Ali court supra, is the only case cited by either party in which a petitioner tried to raise a habeas claim when he was being extradited to the United States from another country. In Sinclair, the petitioner was convicted of four felony counts and sentenced in the United States, but fled to England before he could be taken into custody. He was subsequently arrested by British officials pursuant to an extradition request by the United States based on his convictions. The Delaware district court determined that it had no jurisdiction to hear Sinclair's habeas petition, finding that "Sinclair's restraint is imposed by a foreign sovereign" and thus, that he "is not in custody pursuant to a federally imposed condition or restraint." 702 F. Supp. at 479.[13]

Notably, under the terms of the U.S.-Guatemala Extradition Treaty, "[n]either of the contracting parties shall be bound to deliver up its own citizens under the stipulations of this

---

[13] Petitioner attempts to distinguish Sinclair based on the fact that, in that case, the petitioner was released on bail in England following his arrest, whereas the Petitioner in this case "has been detained for 18 months." (Tr. at 63.) However, Portillo's continued detainment by the Guatemalan government, in itself, is insufficient to distinguish the court's conclusions in Sinclair.

16

convention, but the executive authority of each shall have the power to deliver them up, if, in its discretion, it be deemed proper to do so." (U.S.-Guatemala Extradition Treaty at 5.) Here, the executive authority of Guatemala, alone, has the power to extradite Portillo, a Guatemalan citizen, to the United States. Guatemala made the independent determination to detain Petitioner, and the Guatemalan Courts have upheld this determination. McFarland's actions, as related in the Vásquez Affidavit and the Confidential Cable, only discuss the U.S. Ambassador's working relationship with CICIG and are insufficient to show that the U.S. Government is "responsible for significant restraints on the petitioner's liberty." Abu Ali, 350 F. Supp. 2d at 48.

## IV.   CONCLUSION

In view of the foregoing, Petitioner has not met his burden to establish that the United States is exercising constructive custody over him. Thus, this Court does not have jurisdiction to hear Petitioner's writ of habeas corpus pursuant to 28 U.S.C. § 2241.


IT IS SO ORDERED.

Dated: New York, New York
May 16, 2012

_____
Robert P. Patterson, Jr.
U.S.D.J.

Copies of this order were faxed to:

*Counsel for Petitioner*:
Andrew James Frisch
40 Fulton Street, 23rd Floor
New York, NY 10022
(212) 285-8000
Fax: (212) 304-0352

Glenn W. MacTaggart
Prichard Hawkins McFarland & Young, LLP
10101 Reunion Place, Suite 600
San Antonio, TX 78216
(210) 477-7419
Fax: (210) 477-7469

*Counsel for the Government*:
Michael Max Rosensaft
United States Attorney Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
(212) 637-2366
Fax: (212) 637-2527

Adam Sean Hickey
United States Attorney Office, SDNY
One St. Andrew's Plaza
New York, NY 10007
(212) 637-1039
Fax: (212) 637-0097